Thank you, and we appreciate your indulging us in our need for a short recess. Our final case on this morning's docket is Forest Service Employees for Environmental Ethics v. US Forest Service. Thank you, Your Honor. My name is Tim Bechtold here on behalf of the Forest Service Employees for Environmental Ethics, which I refer to often as FSEE, so I'm going to have to get some of these syllables in there. I'd like to reserve four minutes for rebuttal. Can I ask you a very quick question? You represent a group of Forest Service employees and other individuals, is that right? That's correct. It's not just Forest Service employees? That's right. All right. It includes former Forest Service employees and members of the general public. Okay, thank you. You bet. So the Forest Service's statutory directives under the Organic Act, the National Forest Management Act, and the Multiple-Use Sustained Yield Act require that the Forest Service manage national forests for water, wildlife, forage, timber, and wilderness. The Forest Service manual, which covers all the national forests in the nation under 2703.2, says that if you're not managing for any of those uses, those enumerated statutory uses, then you need a special use permit. Counsel, I think we're all familiar with the background. Let me get to some questions that I have to focus the discussion, if I may. The first question I have for you is, what is the relevant decision? Is it the decision by the district ranger, Millett or Millett, I don't know how to pronounce that, the final notice? Isn't that the decision we're reviewing? Your Honor, the ‑‑ That's the decision that granted the special use permit to the Navy. It did, Your Honor, but the final administrative action of the Forest Service was actually the Forest Service, LaFawn's, was her review of that draft notice. But how can that be? Isn't that the ‑‑ don't we have jurisdiction only over a final decision of the agency? Well, the final agency decision, the final administrative action of the decision, was actually the Forest Supervisor's action, approving the district ranger's approval of the permit. Okay. But I think for purposes of the analysis, it doesn't really matter which of those individuals' decisions that you're reviewing. Because in the ‑‑ Because the complaint, I thought, didn't refer to the ‑‑ referred only to the final notice, but I may be wrong about that. As a practical matter, the ‑‑ and I think we addressed this in our reply brief as well. As a practical matter, it doesn't matter whether it was the district ranger or the Forest Supervisor who would ‑‑ who rely on for that final administrative action, because the simple fact remains the same, is that there was no consideration in the administrative record for the use of private land. Well, I have a question about that as well. In the draft environmental assessment, I'm looking for a page number, SCR 35, there is a comment, what is the need for using national forest system lands, why can't these mobile emitters be placed on private or other land ownerships? Response, we're looking at using assigned lands underneath our MOAs, assigned special use airspace that have forest service. This ensures simplicity and consistency of access, private roads and tribal lands cannot guarantee that. So, why isn't that sufficient to show that this was considered and that there's a reason for rejecting it? Well, Your Honor, for the first reason, of course, is that it's ‑‑ that's not really in the record. But I would like to draw the Court's attention to a Fourth Circuit case. Unfortunately, it's more recently decided, the Cow Pasture River Preservation Association versus the Forest Service, that's found at 911 F3rd 150. Is that cited in any of your papers? No, it is not, unfortunately, Your Honor. Would you please do a 28J letter so that everybody has that opposing counsel and the Court? I certainly can, Your Honor. And that was the case where the ‑‑ on the George Washington National Forest and the Monongahela National Forest, where, in that case, the Federal Energy Regulatory Commission wanted to put a pipeline across. And what the Fourth Circuit said is, look, you can't rely on FERC's analysis because FERC is looking at something else and its purposes are different than yours. So the standard the Forest Service has to address, which is that can this use be reasonably accommodated on private lands, is different from what the agency that is attempting to use the Forest Service lands. So, in that case, the Forest Service simply adopted what FERC said and said that's good enough. But what the Forest Circuit said is, the Forest Service's failure to undertake the analysis violates NFMA, and they remanded back to the Forest Service to do what they called a proper analysis. So the Forest Service there was aware of its obligation to determine whether this project could be reasonably accommodated on non‑national Forest Service lands and relied on FERC to do it for it. But what the Forest Circuit found was that the Forest Service couldn't rely on the agency that wanted to do the project on the land because they were looking at different things. Did that case involve the supplementation of the record, which is one of the main issues here? No, it did not. So I'd also appreciate your comments about that. They rely only on the original administrative record. There are some narrow exceptions to that. And I wonder if you'll discuss that. I certainly could. In this case, the district court invited further briefing after it found that there was nothing in the administrative record that indicated that the Forest Service had considered non‑Forest Service lands that could reasonably accommodate the use that the Navy required. So there's two declarations submitted there that are, I think, important. The first was by a person who works for the Navy, and the second was by the district ranger, Millick. So Mr. Mosher, who works for the Navy, he submitted a declaration, found at the relevant parts here at ER 36 and 37, where he said he references a Navy range team that reviewed maps and charts and presented Mosher with a summary of their review and expressed concern about limited roadside access and things like that at ER 38. So those are where he was basically recollecting things that he thought that he had taken part in from 2009 to 2014, although none of that was in the administrative record. So let me see if I can ‑‑ I know that, but here's my question to you. If those documents are properly considered, and I know you do not concede that, if they are appropriate to be looked at, do they demonstrate that the agency looked at that option? You know, I don't think so, because FC then sent the FOA to the Navy and asked for all documents that Mosher relied on in drafting his declaration, so anything substantiated the representations in that declaration. And this is, of course, not before the court, but the response to that from the Navy was six quad maps, three Forest Service road maps, and a map of the Olympic State Forest. Well, but it's under oath, right? The declaration is under oath. It may be under oath, but there were no reports, no summaries, no e-mails, no analyses, nothing. None of those things were in front of the Navy when they made that declaration. There's no meeting notes. And furthermore, in District Grand Jury Millett's declaration, he states that there are e-mails between his subordinate, Joel Nowak, and that between the Navy and them addressing these private land concerns. However, there are hundreds and hundreds of e-mails in the record, hundreds of them, and none of them are Joel Nowak's e-mails with the Navy talking about private land concerns. So obviously that FOIA response is not in the AR, and it would have been incumbent upon the Forest Service, if there actually were these e-mails, to put them into the administrative record, even upon District Grand Jury Millett's declaration after the conclusion of the case. But they didn't do it. I mean, they're simply not there. And Millett also refers to going out on the land to test these different Forest Service sites at ER-43. But there's no mention of any analysis of any of the private lands. So in other words, there's nothing in Millett's declaration that he did anything to rule out the reasonable accommodation on private lands. Council, I have two questions for you, if I may. One is a legal question, and that is, although the standard to supplement the record is probably interpreted very narrowly, is it proper to supplement the record when the agency needs to do so to explain the factors that it considered or to adequately explain its decision? Your Honor, the court has always held, in this circuit, that one of the standard exceptions is to allow them to explain things. However, this court also held, in the San Luis case, that even if a reviewing court properly admits extra evidence under the exception, it may not use the admitted extra record evidence to determine the correctness or wisdom of the agency's decision. Such use is never permitted. And that was the San Luis case from 2018. But the simple story is, if that declaration had simply explained something that was already in the record, it would be one thing. But that's not what these declarations did. They attempted to add new things to the record. It wasn't an explanation of something that was already in the record. It was adding new factual materials that, unfortunately, were not able to be backed up with any documentary evidence that they say existed. So had District Ranger Millett included those enumerated emails within, as perhaps an exhibit to his declaration, it would have been one thing. But he did not. And they were certainly not in the administrative record. I also have a factual question for you. I don't know if the record addresses this. Because the underlying project that the service gave the special use permit on was the conducting of electronic warfare training. How would that be done on a private parcel of land without opening up the military's training techniques to any adversaries from foreign nations like China or Iran or Russia that wanted to camp on the Olympic Peninsula? I don't think that there's any difference in access to those activities, whether it's on national forest lands or on a tribal land or on private land. Your Honor, the actual installations are simply a truck that drives up, sets up its system, puts out warning tape that says stay away, and then broadcasts the sonic rays so that incoming planes can detect it for training to see where, when the United States is perhaps making an attack on a nation, they can determine where the land-based radar and sonar detection systems are so they can take them out. In this case, the systems are mobile. So they're on a truck. They set up someplace. They emit the radiation or sound waves, and then they stop, and then they drive away and then come back on their other locations. So I don't think that there's a security risk, whether it's on national forest land or otherwise. In fact, the way it's carried out as a practical matter is that you can ride your bike or drive your car on the road up to and drive around where the emitters are. It doesn't stop any use of the Forest Service except for that particular area where they're pulled out. Okay. Thank you. And I realize I'm getting closer. Did you wish to save that time for rebuttal? I certainly do. Thank you, Your Honor. Thank you. Thank you. Good morning. I'm Ellen Durkee for the Forest Service. This Court should affirm the District Court judgment upholding the Forest Service's decision to issue a special use permit to the Navy. Counsel, I have to say that I find this a very troubling case because ordinarily supplementation of the record is allowed when it does not constitute a post hoc rationalization but explains something that's in the record. I didn't see any rationale initially. There was no rationalization to begin with. So it seems like everything was post hoc, and I'm very troubled by that. So what is the hook that allows the supplementation of the record? Well, I think the legal hook is to see if the agency considered this issue, which was their claim that it wasn't considered. But ordinarily an agency's consideration has to be in the record, right? Ordinarily, but the reason you have exceptions, if there are no exceptions, then it wouldn't be an exception. And the reason that there's two points I'd like to focus on in terms of why this exception was not an abuse of discretion by the District Court. First of all, the record is not barren. It does show that the agencies did consider this. It may not have been with perfect clarity, but they did consider this, and I will go through and itemize it. Is there anywhere other than that quote I read from the draft environmental assessment where there's a specific discussion of private lands? There is that quote, and I would like to correct Mr. Bechtol who said that was not in the record. That is in the record. It has a bait stamp of the administrative record on it. But the other places where I think it is addressed are, first of all, we have the decision, and the final decision is the July 2017 decision notice. In that decision, it makes a specific finding. You know, it sets forth this forest plan provision, and then it states that the Navy considered all terms and determined that it could not be accommodated, reasonably accommodated, on private land and made the conclusion that it complies with the forest plan. So it's not as if they did not consider this. It was a specific determination. Now, what in the record backs up the determination? In addition to that early comment, we also have the siting criteria, and we have the application itself. And granted that the application sort of phrased it in terms of justifying why forest land is needed, but I think that's typical of the way, I mean, that's sort of the way it's set up is to, you know, and what that provision is for is, you know, you have to justify why you need forest service land. And the criteria in that shows that. Then we have the maps that, you know, reinforce that there's very little private land underneath the airspace where it needs to be located. Most of it is along the coastline. They need different elevations for these sites. And then there's, and I think those are the main ones that I would point to, with the EA having and the decision notice including the criteria as well. What page is the statement on the decision notice that you're referring to? The statement is on the second volume of the ER at page 70. Thank you. Then what the declarations do in this case is they confirm that, in fact, what is said in the decision notice did occur. And the declarations, so this is, and I would take issue with the characterization of it being a post hoc rationalization. A rationalization is not a rationalization. It's not saying now that we, you know, have been sued, we're going to come up with some reasons that you might find palatable. No. What it did is it explained with some specificity about discussions between the Navy and the Forest Service. And it was in a November 2014 decision which both declarants, you know, could specify who was there and what was discussed. And one thing I'd like to just sort of point out about the special use regulations is that through the process there's two screening processes and then there's the actual application. And the screening processes are the early part, and it even mentions you can orally talk to, you know, the authorized official. And that is when they decide and sort of weed out those which are consistent with the forest plan and those which are not. And so the fact that the indicators are, you know, the 2013 comment on a preliminary draft EA and then that this was discussed in 2014, to me it just reinforces that this was part of the early screening process. And then you also have an email that was, I believe, December 2016, in which one person asked the other, where's the justification for using forest land instead of private land? And the answer was, well, this was determined in the screening process and then it's reflected in the application. But so this is, you know, this is not the kind of cases where, you know, they're filling in something that wasn't actually considered. It's simply providing the confirmation of these conversations. And I think, you know, one of the cases that's most on point is the Presidio case, and that was another case in which this court upheld, over a challenge by the plaintiff, consideration of a declaration that described that conversations had occurred and the substance of those conversations during the administrative process, and that's what occurred here. I'd just like to, there was just one other sort of factual thing I want to make sure the court, that I clarify for the court. There was a flavor in the reply brief and in the opening that special use permits are only required for activities that are not within, you know, recreation or timber or, you know, these other lists that they had. In fact, special use permits are required for many recreational activities, commercial activities, for large group encampments. And I think in considering what needs to be shown as far as private lands being, you know, reasonably able to accommodate, I don't think we want to be in a position of asking the Boy Scouts to come in and rule out all private land before they can have a large encampment. So this kind of consideration in general, is this an appropriate use of private land for Navy training? I think there's a great deal both in the original record and then confirmed in the declarations to show that they considered this and they had rational reasons for concluding that it could not. Unless the court has other questions, I'll stop there. Yes, I have a question that related to what I asked your colleague. Is there any national security or military reason why the training is superior or would be superior on forest service, forest land rather than private land? Or is that not an issue in the case? Well, I think, not that I'm aware of in terms of the actual, where the signal is originating from, whether it would be on private land or on public land, you know, given if you had the criteria that makes that usable. I do think that one of the factors and a reasonable factor here is that if you put it on private land and you have to coordinate with a bunch of different landowners as opposed to, you know, public land, that starts creating problems both, you know, in terms of administrative problems, but I would also think in terms of how many people have to be informed ahead of time of, you know, training exercises. Well, the response to the comment in the EA, or the draft EA, was guaranteed access isn't available on private or tribal land and it's simpler and we want easy access and simplicity. There wasn't a military rationale that was given in the record, was there? Not in terms of, I think, this question about whether it's a security risk, you know, in terms of the ownership, but in terms of needing access, I mean, that is what they need. They need to be able to use them without having to necessarily set them up ahead of time and on short notice, and they do need these different sites so that they can move. In fact, some of the training involves them moving during the training because that's part of learning how to detect the source of these signals. Thank you. Thank you, counsel. Do you have some rebuttal time? Thank you. So, Your Honor, at SCR 35, where the Navy responds that having it on the Forest Service gives it simplicity and consistency of access, that's the Navy's analysis. It's not the Forest Service's analysis. The job of the Forest Service is to determine whether this use could be accommodated somewhere else. And, you know, frankly, the terms of a private lease could prevent public access, whereas on national forests, the public has access. So if the Russians wanted to get to it, they could get it easier on national forests than they could on private land. It's a practical matter. Now, at ER 70, where it says the Navy considered alternatives and determined that they cannot be accommodated on private lands, that's what the Navy did, but that's not the Forest Service. Again, it's the Forest Service's obligation to consider whether it could take place on private land and not on the national forest. Obviously, a special-use permit for a golf course was probably not going to get approved on a national forest because it can be accommodated on private land better. So when you have a special-use permit, that is people who are not part of the Forest Service who want to use Forest Service lands, you need a special-use permit regardless of what it's for. And if I misled you in any other way, I had certainly intention to. Here, FC put the Forest Service on notice that they'd have to do the analysis for private lands throughout the administrative process, again and again and again. Three times, FC said, look, you have to guarantee that this cannot be accommodated on private lands. But the Forest Service didn't take that into account. And I'd just like to bring the Court's attention once more to that these post-hoc declarations did not put any... They had a chance to bring factual things into the record. There are no e-mails or meeting notes or anything else like that. There are thousands of pages of meeting notes and e-mails about other things to do with this permit in the AR, but there's nothing in the AR at all about e-mails or anything or meetings that dealt with accommodations on private lands. So it's simply devoid. And what we'd ask the Court to do is just simply, under the APA, remand it back to the agency and say, do the analysis and then bring it back. So if we were to decide that the case should be remanded, is it your... I understood your position from the briefs was that there would have to be a vacatur of the decision. Well, I think that the... Interim. Excuse me. I think that the standard approach is when you remand a decision, you vacate it and allow them to find the grounds for why they actually put out another decision. So if it's not vacated and the Navy is allowed to keep going as they are, it sort of begs the question, are you just finding excuses to get your decision that you already made? I think if the Forest Service has an opportunity to actually do an analysis, just like the cow pasture case required, that they would do their own analysis and do their own determination of whether or not the use could be accommodated on private lands. So I think that because those post hoc declarations brought in information that was, frankly, not before the decision makers, I think that the Forest Service is obligated to take a look at the decision from the beginning and do a proper analysis. That it simply didn't happen here. The district court found that there was no analysis in the record, and the district court was right. But the district court, I think, took a faulty step of asking for a supplemental briefing and then determined that even that would be a post hoc rationale and said, look, but to make this matter simple, I'm just going to consider them, and I think they did what they should have done. But, unfortunately, there was no record that they, even with those declarations, that they did what they should have done. Because I think the representations in those declarations are unsupported. Thank you, counsel. Thank you. I appreciate it. The case just argued is submitted. We appreciate both of the arguments. And for this morning's session, we are adjourned. Thank you.
judges: Graber, Gould, Ezra